I concur with the majority's analysis of the absence of any basis for justifying the admissibility of Dr. Gordon's deposition testimony to show Dr. Gordon's bias. The majority opinion reverses the judgment of the trial court because it allowed evidence to be introduced with respect to Middleton's expert witness, Dr. Mark Gordon, a physician. I concur in the result as to that portion of the majority opinion.
Dr. Gordon testified that Dr. Lightfoot breached the standard of care in performing a laparoscopic cholecystectomy by failing to recognize that he had inadvertently punctured the bowel with a trocar (a surgical instrument) and then failing to discover and treat the injury before he closed the *Page 118 
incision. Lightfoot persuaded the trial court that evidence concerning Dr. Gordon's alleged deviation from the standard of care in an unrelated medical-malpractice action against Dr. Gordon involving a laparoscopic cholecystectomy was admissible in this action charging Dr. Lightfoot with deviating from the standard of care in a laparoscopic cholecystectomy. The evidence related to Dr. Gordon's deliberately clipping what he thought was in fact a vein, but which was in fact a small bile duct, and then failing to recognize his mistake before closing the incision.
The evidence surrounding Dr. Gordon's clipping of a bile duct he thought was a vein led to the filing of a medical-malpractice action against him in which he testified that he had not breached the standard of care. Lightfoot argued to the trial court that evidence of this incident is admissible to show a prior inconsistent statement on the part of Dr. Gordon. Lightfoot contends that this evidence shows that Dr. Gordon was applying "two unique standards of care."
The majority opinion concludes that the facts concerning Dr. Gordon's laparoscopic cholecystectomy are "not remotely similar to the negligent conduct in this action." 885 So.2d at 116. The majority opinion bases this conclusion on the following rationale:
 "In Dr. Gordon's case, Dr. Gordon deliberately cut a bile duct, which he saw; here, he criticizes Dr. Lightfoot for failing to see an injury he allegedly inadvertently caused. Thus the evidence has no tendency to show that Dr. Gordon was applying `two unique standards of care.' In short, the evidence had no probative value for the issue material to this case."
885 So.2d at 116.
I do not consider the distinction between what Dr. Gordon saw and what Dr. Lightfoot failed to see at the time of the respective injuries to be determinative. While Dr. Gordon deliberately cut a bile duct, which he saw, the evidence showed that at the time he made the incision, he was under the erroneous impression that the bile duct was a vein, and that he continued to have this erroneous impression up to and past the time he closed the incision. Therefore, Dr. Gordon closed the incision and completed the procedure without realizing that he had cut a bile duct. According to Dr. Gordon, Dr. Lightfoot was guilty of a breach of the standard of care in failing to discover and treat a punctured bowel before closing the incision. Both physicians were thus susceptible to a charge that they had breached the standard of care in failing to discover and treat before closing the incision an injury inflicted during a laparoscopic cholecystectomy. However, the common fact that both physicians closed incisions in ignorance of the facts during the same kind of surgical procedure does not justify admission of the facts surrounding Dr. Gordon's procedure.
In the case before us, the injury that occurred during the surgery was a punctured bowel. In Dr. Gordon's case, the patient sustained a biliary injury because of what Dr. Gordon described as a "very rare anatomical anomaly." Dr. Gordon's patient, according to the undisputed evidence, was a thin young woman whose bile duct measured only a couple of millimeters and entered into the neck of her gallbladder. Dr. Gordon testified that it was such a tiny duct that he did not recognize it. Dr. Gordon's procedure took place in the region of the gallbladder, well away from the intestines. According to Dr. Gordon, "the bile duct was so tiny that I probably thought it was a vein because it was not going where it was supposed to be going." The failure to detect an injury to a tiny bile duct in a region away from the intestines *Page 119 
is not similar to a failure to detect a puncture wound to the bowel, a portion of the intestines. Absent similarity, the evidence loses materiality. It is impermissible to impeach a witness with evidence of self-contradiction on an immaterial matter. Charles W. Gamble, McElroy's Alabama Evidence § 156.01 (5th ed. 1996).
The prejudicial effect of this evidence is exacerbated by the phonetic similarity between "bowel" and "bile." Indeed, the transcript reflects concerns over pronunciation of "bile" in a manner that could be understood as "bowel" during the reading to the jury of portions of Dr. Gordon's deposition by counsel for Lightfoot.
I therefore reach the same conclusion as the majority opinion as to the absence of similarity between the two incidents, but do so on different grounds. Therefore I must concur in the result as to this aspect of the opinion. It is not necessary to address other bases upon which Middleton relies in his effort to obtain a reversal of the judgment.